**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HAOWEN Z., individually, and as Guardian Ad Litem for her minor child, M.W., <br><br> Plaintiff, <br><br> v. <br><br><br> POWAY UNIFIED SCHOOL DISTRICT, <br><br> Defendant. | Case No.: 13-CV-1589-JM (BLM) <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

On July 12, 2013, Plaintiff M.W., a minor represented by Haowen Z., his mother and Guardian *Ad Litem*, filed a complaint against the Poway Unified School District (the "District") to prevent the District from administering a test pursuant to an order from Administrative Law Judge ("A.L.J.") Clifford Woosley. On July 15, 2013, Plaintiff filed a motion for a preliminary injunction to obtain

1

additional assistance for her hearing impairment. For the following reasons, the court DENIES Plaintiff's motion for a preliminary injunction.

## I. Background

Although the court relies principally on the factual findings contained in A.L.J. Woosley's opinion, see Plaintiff's Motion for Preliminary Injunction ("MPI"), Exhibit A, a brief synopsis of the facts is contained herein. Plaintiff is a 10-year-old student who qualifies for and receives special education and related services because he has been categorized as autistic and of limited English proficiency. He currently attends a general education class. However, Plaintiff also receives supports and services, including 120 minute specialized academic instruction ("SAI") four times a week, 1:1 special circumstance instructional assistant ("SCIA") throughout the school day, 30 minute language and speech sessions with a total of 58 sessions per year, and 30 minute occupational therapy consultation nine sessions per year.

Plaintiff was due for his triennial assessment, which was to be conducted by the District on November 30, 2012. MPI at 1-2. Prior to testing, the District provided Plaintiff's parent with a proposed assessment plan dated September 12, 2012. Id. at 2. In previous triennial assessments conducted in 2007 and 2010, Plaintiff underwent a KABC-II test, both of which returned uninterpretable scaled and composite indices. Plaintiff claims that "[t]he significant variability among scores was consistent with the fact that [Plaintiff] had autism, communication deficits and was an English Language Learner." Compl. ¶ 21. The District sought to administer the KABC-II test again. MPI at 2. On October 2, 2012, Plaintiff's parent refused to consent to the administration of the KABC-II test.

On October 2, 2012, the District filed a request for a due process hearing to obtain the right to assess Plaintiff with the KABC-II over the objections of

Plaintiff's parent with Office of Administrative Hearings ("OAH"). Compl. ¶ 18. On November 16, 2013, Plaintiff's Individual Education Program ("IEP") meeting was held. MPI at 2. Plaintiff's advocate and parent refused to consent to the administration of the KABC-II test. Compl. ¶ 16; MPI at 2. Plaintiff's parent allegedly "did not want to consent to the KABC-II I.Q. test for several reasons, including the fact that the District agreed it did not need Student's I.Q. score and Parent's concern about research that shows that autistic children tend to underperform on I.Q. testing, which can lower the expectations of school professionals and be used to justify lower performance or make placement decisions, etc." Compl. ¶ 17.

Plaintiff further alleges that the District psychologist only mentioned two areas that needed testing: rapid naming and phonological processing. Compl. ¶ 23. The KABC-11 allegedly covers neither of these. Id. However, Plaintiff's parent allegedly had already consented to other tests, which included both rapid naming and phonological processing subtests.[1] Id. Despite the District psychologist's claim that rapid naming and phonological processing tests were needed and Plaintiff's parent's consent to administering such tests, the District did not complete the subtests for these areas. Id.

On December 7, 2012, the District notified Plaintiff's advocate that it declined to use her proposed test because it was not an intelligence test and would not provide the District with the information it required. MPI at 2.

On or about February 20, 2013, Plaintiff's parent filed a request for due process hearing with OAH seeking an order compelling the District to assess Student for auditory processing deficits on the Plaintiff's behalf. Compl. ¶ 30. On

---

[1] These tests were Clinical Evaluation of Language Fundamentals (CELF) and a Wechsler Individual Achievement Test (WIAT). Compl. ¶ 23.

3

February 26, 2013, OAH consolidated the cases filed by the District and Plaintiff's parent. Id. ¶ 31. OAH's A.L.J. Clifford Woosley presided over a due process hearing on April 16 and 17, 2013. Id. ¶ 32. On May 24, 2013, he issued an OAH decision "concluding that for an auditory processing deficit and also concluded that the District not only was entitled to perform the KABC-II I.Q. test over parent's objection, but ordered that it do so within 60 days of the date of the order." Id. ¶ 34.

In reaching his decision, A.L.J. Woosley arrived at several important legal conclusions, including:

> The IDEA provides for periodic reevaluations to be conducted not more frequently than once a year unless the parents and District agree otherwise, but at least once every three years unless the parent and District agree that a reevaluation is not necessary. (20 U.S.C § 1414(a)(2)(B); Ed. Code, § 56381. subd. (a)(2).) A reassessment may also be performed if warranted by the child's educational or related services needs. (20 US.C §1414(a)(2)(A)(i); Ed. Code. § 56381, subd. (a)(1)) . . . Reassessments require parental consent. (20 U.S.C § 1414(c)(3); Ed. Code. §56381, subd. (f)(1).)
>
> . . .
>
> If the parents do not consent to a reassessment plan, the district may conduct the reassessment by showing at a due process hearing that it needs to reassess the student and it is lawfully entitled to do so. (20 U.S.C § 1414(c)(3); 34 C.F.R. § 300.300(a)(3)(i), (c)(ii) (2006)10; Ed. Code, §§ 56381, subd. (f)(3), 56501, subd. (a)(3)).
>
> . . .
>
> A school district must use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information to determine whether the child is eligible for special education

> services. (20 U.S.C. § 1414(b)(2)(A); 34 CFR § 300.304 (b)(1).) The assessment must use technically sound instruments that assess the relative contribution of cognitive, behavioral, physical, and developmental factors. (20 U.S.C § 1414(b)(2)(C); 34 CFR § 300.304(b)(3).) Assessment materials must be used for purposes for which they are valid and reliable. (20 U.S.C § 1414(b)(3(A)(iii)); 34 C.FR § 300.304(c)(1)(iii); Ed. Code, § 56320, subd. (b)(2).)
>
> . . .
>
> If the evaluation procedures required by law are met, the selection of particular testing or evaluation instrument is at the discretion of the school district. Once selected, the instrument must be administered in accordance with the instructions provided by the producer, including use of composite scores if called for by the instructions. (Office of Special Education Programs ("COSEP") interpretative letter . . . to Anonymous (Sept. 17, 1993), 20 IDELR 542; cited approvingly in OAH case Manteca Unified School Dist. (Dec.13, 2011) III LRP 7785).

MPI, Exhibit A, 26-28. In addition to the aforementioned findings, A.L.J. Woosley noted that the evaluation procedures are met if assessments are administered by trained and knowledgeable personnel who prepare a report that includes: (1) whether the student may need special education and related services; (2) the basis for making the determination, (3) the relevant behavior noted during the observation of the student in an appropriate setting; (4) the relationship of that behavior to the student's academic and social functioning; (5) the educationally relevant health and development, and medical findings, if any; and (6) a determination concerning the effects of environmental, cultural, or economic disadvantage, where appropriate, and (6) the need for specialized services, materials, and equipment for students with low incidence disabilities. See id. A.L.J. Woosley found that these criteria had been met. He also concluded that

Plaintiff "had not referenced any legal authority that allows a parent to choose the instrument a district must use in an assessment." MPI, Exhibit A, 33-34.

Plaintiff asserts one claim: appeal of the OAH decision. Pursuant to that claim, Plaintiff requests the following relief: a declaration that the District has not met its burden of proof to demonstrate that Plaintiff's intellectual ability should be assessed; an enjoinment preventing the District from administrating the KABC-II test to the student; an order requiring the District to assess Plaintiff for an auditory processing disorder by an independent audiologist; a declaration that Plaintiff is the prevailing party with respect to the aforementioned requests for relief; and reasonable attorney's fees.

## II.     Legal Standard

A plaintiff seeking a preliminary injunction or temporary restraining order must establish that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. See Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987).

Under both formulations, however, the party must demonstrate a "fair chance of success on the merits" and a "significant threat of irreparable injury." Id.; Miller v. California Pac. Med. Ctr., 19 F.3d 449, 456 (9th Cir. 1994 (en banc). "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the

injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

The Individuals with Disabilities Education Act ("IDEA") permits "[a]ny party aggrieved by the findings and decision made" by the A.L.J. in a due process hearing to bring a civil action to. 20 U.S.C. § 1415(i)(2)(A). Due weight must be accorded to the state administrative proceedings. See Hendrick Hudson Central School District Board of Education v. Rowley, 458 U.S. 176, 205-06 (1982).

## III. Discussion

### A. Likelihood of Success on the Merits

Plaintiff contends that serious questions regarding the merits exist because the KABC-II is not a test necessary to produce relevant information to assist the District in determining his educational needs. Plaintiff notes that courts "have repeatedly held that, where there is a dispute over eligibility or the need for specific special education services, school districts are entitled to assess students, and parents must either give their consent to such assessments or forgo the services they are seeking." MPI at 6. Plaintiff, however, insists that the aforementioned holding is not at issue here.

Rather, Plaintiff asserts that the issue is whether, in this case, a school district can administer an I.Q. test to a student where neither eligibility nor entitlement to specific services is at issue. The only case that Plaintiff cites in support of this contention is Larry P. v. Riles, 495 F. Supp. 926 (N.D. Cal. 1979), which held that a school district could not use I.Q. tests because they only "measure the degree to which a particular individual who takes the test has experience with a particular piece of information, the particular bits of knowledge, the particular habit and approaches that are tested in these tests." Id. at 952.

Plaintiff next argues that the District bears the burden of demonstrating that it needed to administer the KABC-II to obtain data needed to provide him with an appropriate educational program and that A.L.J. Woosley ignored the statutory requirement to show this need. See MPI at 7-9. Plaintiff notes that the District's expert, school psychologist Laura Hulsey, testified that the KABC-II might provide some useful information, but that she agreed that there was no need to compute Plaintiff's score. See id. at 7. Plaintiff then notes that his expert, Dr. Reinze Haytasingh, a school psychologist who works for a neighboring school district, testified that there was no need for the District to administer the KABC-II test. Moreover, Dr. Haytasingh testified that the administration of the KABC-II test would again be uninterpretable and unreliable. See id. at 8.

The District argues that "Ms. Hulsey . . . who [was] responsible for conducting the psychoeducational portion of [Plaintiff's] triennial assessment, was qualified to make the determination as to what assessments should occur and believed that the intellectual development should be reassessed due to discrepancies between the two previous administrations of the KABC-II test, and Student's age at the time the previous tests were administered." Opp. MTD at 6. The District also argues that a parent who wants his or her child to receive special education services is required to permit reassessment of his or her child. See Opp. MTD at 6 (citing 34 C.F.R. § 300.304(c)(6)).

Plaintiff has provided no legal support for his position that the District is not entitled to deference regarding the tests to be administered in his evaluation. The court finds that applying that standard would set a dangerous precedent. The only case cited by the Plaintiff is inapplicable here. Larry P. involved a protected class of citizens, African-Americans, and an accusation that school officials were using

8

the I.Q. test to discriminate against them based on their race. Plaintiff has submitted no evidence of similar discriminatory intent here.

The court agrees with the District's contention that Plaintiff's parent is not entitled to choose the tests that the District may use to assess her child. See K.S. v. Fremont Unified Sch. Dist., 679 F. Supp. 2d 1046 (N.D. Cal. 2009) (finding that a plaintiff with autism was not entitled to an I.Q. test to determine cognitive ability). Any differences of opinion between Plaintiff's expert and the District's expert, without something more such as the discriminatory intent present in Larry P., are insufficient to overcome that deference. Accordingly, this factor weighs heavily against Plaintiff.

**B. Irreparable Harm**

Plaintiff argues that he will be irreparably harmed if he takes the KABC-II test because of the Pygmalion effect, which occurs when teachers' altered expectations of a child have negative consequences on a child's self-esteem. See MPI at 8-9, 11. Plaintiff notes that teachers and parents would lower their expectations of Plaintiff even if they are told that his KABC-II tests were uninterpretable due to subtest scatter. In addition, Plaintiff is concerned that a low test score would affect his ability to be placed in the Poway Academy of Learning "PAL" program, which requires "high cognitive ability." See id. at 10. Defendants counter that "if [Plaintiff] prevails on the merits of this action through this appeal, this [c]ourt has the power to order that the [I.Q.] score be removed from [his] records." Opp. MPI at 7.

The court finds that the prospects of alleged irreparable harm if the KABC-II test is administered to be highly speculative. To the extent placement in the "PAL" program is predicated upon cognitive ability, the KABC-II tests could conceivably

be helpful in an assessment as well as clarification of prior discrepancies. In this vein, the court also notes that the KABC-II test has previously been administered to the Plaintiff and that those test results are already in his record. The expectations of teachers, school officials, and others may be informed, in part, by past KABC-II test results, thereby diluting Plaintiff's argument. Thus, this factor does not weigh in favor of Plaintiff.

### C. Balance of Equities

Plaintiff argues that he would suffer much harm if he is required to take the KABC-II test, but that the District will experience no such harm, especially as Ms. Hulsey testified that the KABC-II test could be useful, but that computation of the score was unnecessary. However, the District claims that its inability to administer the KABC-II test deprives it of obtaining a complete picture of Plaintiff's strengths and weaknesses. See Opp. MPI at 7. The court is concerned about how any decision favoring the Plaintiff could undermine the ability of any District to evaluate disabled students. The court finds that both parties have presented equally valid arguments and therefore concludes that this factor weighs equally in favor of both parties.

### D. Public Interest

Plaintiff claims that there is a public interest in preserving the rights of a student with disabilities, such as himself. The District does not contest this argument. The court agrees that the rights of students with disabilities should be preserved. Therefore, this factor weighs slightly in favor of Plaintiff.

### E. Weighing of Preliminary Injunction Factors

The irreparable harm, balance of the equities, and public interest factors are, from Plaintiff's perspective, neutral at best. However, the court's finding that

Plaintiff is unlikely to win on the merits weighs more heavily against Plaintiff. The court therefore declines to grant Plaintiff's motion for a preliminary injunction.

## IV. Conclusion

For the aforementioned reasons, this court hereby DENIES Plaintiff's motion for a preliminary injunction.

**IT IS SO ORDERED.**

DATED: August 14, 2013

**Jeffrey T. Miller**
**United States District Judge**